Filed 8/29/13  Narog v. Claybaugh CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CORY NAROG,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ALLEN CLAYBAUGH,<br><br>        Defendant and Respondent. | A131782<br><br>(San Mateo County<br>Super. Ct. No. CIV498746) |

Plaintiff Cory Narog filed a petition for a restraining order against alleged harassment by his neighbor, defendant Allen Claybaugh.  Claybaugh responded with a motion to declare Narog a vexatious litigant and require him to post security before pursuing his petition.  At the hearing on the motion, the trial court found Narog to satisfy the statutory requirements for a vexatious litigant and provided him the opportunity to demonstrate he was likely to prevail on his petition for a restraining order.  After taking testimony from Narog regarding the nature of his claims of harassment, the trial court granted Claybaugh's motion, finding Narog not credible and unlikely to prevail on his claims.  When Narog failed to post the required security, the trial court dismissed his petition and entered an award of statutory attorney fees.  We affirm.

## I.  BACKGROUND

On September 10, 2010, Narog filed a petition for a temporary restraining order to prevent harassment of himself and other members of his household by Claybaugh.  The motion alleged Claybaugh had screamed threats at Narog, shined floodlights on a nightly basis into Narog's home, played basketball at 6:45 a.m. to wake Narog, and kept Narog

under surveillance.  As a result of these acts, Narog claimed, he was in "fear for my life and safety."

Prior to hearing on the motion, Claybaugh filed a motion for entry of an order declaring Narog to be a vexatious litigant and requiring him to obtain leave of court before filing future litigation.  The motion was supported by evidence Narog had filed a large number of lawsuits in San Mateo County Superior Court and other jurisdictions and had been found, barely a year earlier, to be a vexatious litigant by the Santa Clara County Superior Court.  Claybaugh also attached court documents demonstrating Narog had represented himself in pro. per. in five specific unsuccessful lawsuits during the prior seven years, captioned *Narog v. Ballack* (Super. Ct. San Mateo County, No. CIV442068); *Narog v. Barajas* (Super. Ct. San Mateo County, No. CIV442860) (*Barajas*); *Narog v. Anderson Chevrolet* (Super. Ct. San Mateo County, No. CLJ447781); *Narog v. City of Redwood City Police Department* (Super. Ct. San Mateo County, No. CIV448428); and *Narog v. Fung* (Super. Ct. San Mateo County, No. CIV493181) (*Fung*).  All but *Fung* had been used to support the motion for vexatious litigant status in Santa Clara County.

At hearing on the motion, the trial court first found Narog to be a vexatious litigant.  In making this determination, the trial court applied the doctrine of collateral estoppel to adopt the findings of the Santa Clara County Superior Court with respect to the four actions listed above.  As to the fifth, *Fung,* the trial court relied on the evidence submitted in connection with Claybaugh's motion.

The trial court then permitted Narog to present evidence on the likelihood of his prevailing on his petition for a restraining order.  Narog testified, describing verbal threats and abuse by Claybaugh, suspicious actions, such as staring and photography, and other acts of harassment, such as early morning ball-playing and light-shining.  In connection with his opposition to the restraining order, Claybaugh had submitted a

2

declaration to the court presenting a very different account of events, stating he had met Narog face-to-face only once and denying any intentional harassment.[1]

At the conclusion of the hearing, the trial court concluded Narog was not likely to prevail on his claims. The court rejected Narog's testimony of actual threats as not credible and found his perception of other events to be exaggerated. The court concluded Claybaugh's basketball-playing did not constitute harassment, saw nothing unusual in the Claybaugh home security lighting, which was located "across two streets and across a body of water, with trees in the direct view" from Narog's house, and found the parties' photography as "mutual" and done in "self-defense," rather than with the intent of harassment. The court accordingly required Narog to post security of $25,000 prior to moving forward with the petition for a restraining order. After Narog failed to post the required security in a timely manner, the trial court dismissed his petition under section 391.4.

Claybaugh then filed a motion for attorney fees and costs pursuant to section 527.6, supported by evidence of the fees and costs incurred. The trial court granted the motion for attorney fees and costs to the extent the costs were incurred in defense of the petition for a restraining order. The court disallowed fees and costs incurred solely in connection with the motion to declare Narog a vexatious litigant, but it recognized the tasks were, to some degree, inextricably intertwined. The court also awarded attorney fees and costs associated with the filing of the attorney fees motion itself, ultimately entering judgment for Claybaugh in the amount of $23,405.04.

## II. DISCUSSION

Narog argues (1) the evidence was insufficient as a matter of law to support the trial court's declaration of vexatious litigant status, (2) the trial court abused its discretion in finding him unlikely to prevail on the merits of his petition, and (3) the trial court erred in awarding attorney fees.

---

[1] Code of Civil Procedure section 391.2 expressly authorized the trial court to consider evidence by declaration in evaluating Narog's likelihood of success.

Further statutory references are to the Code of Civil Procedure.

3

## A. *Vexatious Litigant Rulings*

"The vexatious litigant statutes (§§ 391–391.7) are designed to curb misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants." (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1169.) "The vexatious litigant statutes . . . provide two distinct and cumulative remedies against vexatious litigants . . . . [Citation.] The first of these remedies is an order to furnish security, as described in section 391.3. A defendant obtains this remedy . . . by bringing a motion under section 391.1, which requires determinations that the plaintiff is a vexatious litigant and that there is no reasonable probability that he or she will prevail on the merits in the action. If the court issues an order to furnish security, the action is automatically stayed from the time the motion was filed until 10 days after the plaintiff posts the required security. (§ 391.6.) If the plaintiff fails to post the security, the action 'shall be dismissed as to the defendant for whose benefit it was ordered furnished.' " (*Golin v. Allenby* (2010) 190 Cal.App.4th 616, 633–634, fns. omitted.) "When considering a motion to declare a litigant vexatious under section 391.1, the trial court performs an evaluative function. The court must weigh the evidence to decide both whether the party is vexatious based on the statutory criteria and whether he or she has a reasonable probability of prevailing. [Citation.] Accordingly, the court does not assume the truth of a litigant's factual allegations and it may receive and weigh evidence before deciding whether the litigant has a reasonable chance of prevailing." (*Id.* at p. 635.)

In order to be declared a vexatious litigant, the plaintiff must come within one of the definitions in section 391, subdivision (b). (*Morton v. Wagner* (2007) 156 Cal.App.4th 963, 969.) Here, the trial court found Narog to be a vexatious litigant under section 391, subdivision (b)(1), which applies if the plaintiff "[i]n the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing." We review the trial

4

court's order declaring a party to be a vexatious litigant for substantial evidence. (*Morton v. Wagner*, at p. 969.)

Narog contends the trial court erred in invoking the doctrine of collateral estoppel to find him a vexatious litigant under section 391, subdivision (b)(1) because one of the actions on which the Santa Clara County Superior Court relied, *Barajas,* did not satisfy the requirements of the subdivision. So long as Narog had a full and fair opportunity to litigate the validity of the disputed issues in Santa Clara County, however, an error by that court did not preclude application of the doctrine of collateral estoppel in this action. The purpose of the doctrine is precisely to avoid relitigation of issues previously decided. As the court held in *Proctor v. Vishay Intertechnology, Inc.* (2013) 213 Cal.App.4th 1258, " 'collateral estoppel may apply even where the issue was wrongly decided in the first action.' [Citations.] ' "In passing upon the plea of *res judicata*, the question is not whether a court decided the point involved right or wrong [*sic*] . . . the question is, Did the court decide the point and is the decision final?" ' " (*Id.* at p. 1270.) Narog does not contend he was not permitted a full and fair opportunity to litigate in Santa Clara County. Accordingly, the trial court did not err in granting collateral estoppel effect to the Santa Clara County order.

In any event, we find no support in the record for his claims of error. First, he contends the Santa Clara County Superior Court erred in finding he represented himself in *Barajas.* Narog's opposition to the vexatious litigant motion, however, acknowledged that, while he had commenced the action through counsel, he "became pro per when his attorney withdrew for reasons unrelated to the merits of the case." Claybaugh's evidence in support of his motion confirmed that, within "two or three months" of the filing of *Barajas*, Narog represented himself and maintained the lawsuit to its conclusion. Accordingly, the court's finding that Narog represented himself in the *Barajas* action was supported by substantial evidence.

Narog makes the same claim about another case, *Fung,* which was not involved in the Santa Clara County order. With respect to that case, the trial court took judicial notice of the court file, which contained an entry stating that Narog had filed the petition

5

commencing the suit on his own behalf. Again, the court's finding that Narog represented himself in this action was supported by substantial evidence.

Narog argues his representation by counsel at times during those litigations disqualified them from consideration under section 391, subdivision (b)(1), but a party need not have appeared in pro. per. for the entirety of a lawsuit for the action to be covered by the statute. Rather, a lawsuit satisfies the statutory requirement if the plaintiff "commenced, prosecuted, or maintained" the litigation in pro. per. (*Ibid.*) When Narog took over representation in the *Barajas* case and pursued it to its conclusion, he both "prosecuted" and "maintained" the litigation in pro. per. Similarly, when Narog filed the *Fung* petition, he "commenced" the litigation in pro. per. Even though Narog was represented by counsel at some point during both those actions, they both qualified for consideration under subdivision (b)(1).

At oral argument, Narog's counsel contended the Santa Clara County Superior Court erred in finding *Barajas* was determined adversely to him.[2] In making the argument, counsel relied on a declaration in the record stating Narog agreed to dismissal of two of the plaintiffs in the case in return for their waiver of costs in February 2006. While the adverse nature of such a dismissal could be debated, since Narog as plaintiff recovered nothing, it is unnecessary for us to resolve the issue because another document in the record demonstrates the entire action was dismissed in June 2006 for failure to

---

[2] In his brief on appeal, Narog contended, without citation to evidence, that in *Barajas* he "prevailed in arbitration and received a settlement." In his reply brief, Narog acknowledges that evidence of the claimed settlement is "[a]bsent from" the appellate record. We find no evidence in the record that *Barajas* was settled after an arbitration. On June 18, 2013, Narog submitted a pleading entitled, "Portions of Appellant's Reply Brief," which bound together two documents. We construed the pleading as a motion to augment and deferred decision. We now deny that motion. The letter included in the pleading is not a proper subject of judicial notice, while the judgment included is of no discernible relevance to this case, since it concerns a San Joaquin County lawsuit that was not among the lawsuits relied on by the trial court.

6

prosecute.[3]  Again, although an error in the Santa Clara County Superior Court order would not preclude the invocation of collateral estoppel, there is no basis for finding such an error.

Narog argues Claybaugh failed to demonstrate Narog was unlikely to prevail on his petition for a restraining order but instead "won his motion by default" because Narog's counsel was unable to "rebut any evidence offered to the court."  We have reviewed the record and find the trial court's finding of an absence of likelihood of success to be supported by substantial evidence.  Claybaugh's declaration submitted in opposition to the restraining order, if believed, demonstrated Narog's petition to be unsubstantiated.  The trial court allowed Narog a full opportunity to present evidence supporting his allegations and found his account of events to lack credibility.  We have no basis for second-guessing that determination.

## B.  *Attorney Fees*

Narog's petition for a temporary restraining order was filed under the authority of section 527.6, which permits the entry of a temporary restraining order and injunction prohibiting harassment by one person of another.  (*Id.*, subd. (a).)  Subdivision (r) of section 527.6 permits the trial court to award attorney fees and costs to the "prevailing party" in "any action" brought under section 527.6.  Because subdivision (r) does not define "prevailing party," we look to the definition of "prevailing party" under section 1032.  (*Adler v. Vaicius* (1993) 21 Cal.App.4th 1770, 1777.)  Whether to award such fees under section 527.6, subdivision (r) lies in the discretion of the trial court; no

---

[3] Counsel claimed at oral argument that there were two separate *Barajas* cases, one involving personal injury and one involving property damage.  The docket numbers for both the *Barajas* cases mentioned in the declaration and the dismissed case were the same:  San Mateo County Superior Court No. CIV442860.  Further, the order of dismissal characterized the dismissed case as involving "PI/PD–MOTOR VEHICLE."  Accordingly, we find no evidence in the record to support counsel's claim of two separate actions.

7

showing of lack of merit or frivolousness is required.[4]  (*Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 802.)

Narog contends the trial court erred in entering fees under section 527.6, subdivision (r) because the case "was not heard on its merits."  Under section 1032, subdivision (a)(4), "prevailing party" includes "a defendant in whose favor a dismissal is entered."  A full hearing on the merits is not required for a defendant to be declared a prevailing party.  (*Adler v. Vaicius, supra,* 21 Cal.App.4th at p. 1776.)  Under the circumstances here, in which the trial court found no likelihood of Narog prevailing after an evidentiary hearing and ultimately dismissed Narog's petition pursuant to statute after he failed to post security, we find no abuse of the trial court's discretion in its conclusion Claybaugh was entitled to fees.[5]

Narog argues the trial court abused its discretion in granting Claybaugh reimbursement for attorney fees incurred in prosecuting his attorney fees motion.  It is generally recognized that a trial court has discretion to award fees of this type, which are commonly referred to as " 'fees on fees.' "  (*Estate of Trynin* (1989) 49 Cal.3d 868, 871; *Pellegrino v. Robert Half Internat., Inc.* (2010) 182 Cal.App.4th 278, 294.)  Particularly given the circumstances of this case, in which Narog was found to have forced his neighbor to incur substantial litigation expenses on the basis of a baseless petition, we find no abuse of discretion in the award of fees on fees.

In arguing against the award of fees on fees, Narog relies for support on *Zurich Ins. Co. v. Killer Music, Inc.* (9th Cir. 1993) 998 F.2d 674, which held that the prevailing

---

[4] In his appellant's opening brief, Narog refers to an attorney fees provision in section 527.7, subdivision (c), which does require a showing of groundlessness or bad faith.  That provision is irrelevant here, since it applies only to actions brought to enjoin criminal activity under section 527.7, subdivision (b).

[5] Narog argues for the first time in his reply brief that the trial judge should have recused herself and failed to consider his pro. per. status in awarding attorney fees.  These arguments were waived on appeal when Narog did not raise them in his opening brief.  (*California Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Estate Group* (2011) 193 Cal.App.4th 849, 862.)  We deny as moot Claybaugh's motion to strike the portions of Narog's reply brief dealing with these arguments.

defendant in a declaratory relief action over insurance coverage was not entitled to an award of the attorney fees incurred in defending the action. (*Id.* at p. 680.) As is clear from that description, *Zurich Ins. Co.* arose in a different factual context. It does not mention the issue of fees on fees. In any event, as federal authority, it would not preclude the award of fees on fees authorized in such cases as *Estate of Trynin.*

### III. DISPOSITION

The judgment of the trial court is affirmed.


_____
Margulies, Acting P.J.


We concur:


_____
Dondero, J.


_____
Banke, J.

9